UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

ROBERT PANN,

          Plaintiff,          Case No. 1:22-cv-30

v.                                    Honorable Paul L. Maloney

UNKNOWN BURT et al.,

          Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## Discussion

### I. Factual allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Carson City Correctional Facility (DRF) in Carson City, Montcalm County, Michigan. The events about which he complains, however, occurred at the Muskegon Correctional Facility (MCF)

in Muskegon, Muskegon County, Michigan. Plaintiff sues Warden Unknown Burt, Librarian Unknown Hardiman, Mail Room Supervisor Unknown Party, the Muskegon Correctional Facility (MCF), MDOC Director Daniel Heyns, and Deputy Director Thomas Finco.

Plaintiff alleges that in December of 1994, after a grand jury failed to indict Plaintiff, Macomb County Prosecutor Carl Marlinga filed a petition in the Macomb County Probate Court to have a missing person declared dead. In 1995, Probate Judge Nowicki declared that Bernice Gray died on December 26, 1991, at 6:30 a.m. on Gordon St. Both the probate order and death certificate were used as evidence in Plaintiff's 2001 murder trial. Plaintiff was convicted of first-degree murder and felony firearm following a jury trial and was sentenced to life imprisonment for the murder conviction and a two-year term of imprisonment for the felony-firearm conviction. *Michigan v. Pann*, No. 271013, 2007 WL 2683771, at *1 (Mich. Ct. App. Sept. 13, 2007).

Plaintiff alleges that in 2017, he reread the transcripts and wrote to Prosecutor Marlinga to request the petition of death. At this point, Plaintiff discovered that police detective Tom Jenny had lied under oath when he testified that there were no reported sightings of Bernice Gray after December 26, 1991, at 6:30 a.m. Plaintiff states that the death certificate was granted based on this false testimony. Plaintiff claims that he was never notified of the proceeding because of a misunderstanding of state law, and that the failure to notify him violated his due process rights.

Plaintiff filed a case in probate court challenging the issuance of the death certificate and asserting that there had been a fraud on the court. Plaintiff claimed standing as the father of a child born out of wedlock. The probate court dismissed Plaintiff's filing because he failed to provide an affidavit of parenthood for the daughter he shared with Bernice Gray. Plaintiff states that he appealed to the Michigan Court of Appeals, which upheld the probate court decision. Plaintiff states that he did not receive the Michigan Court of Appeals' order for eleven days, in part because

2

of the Thanksgiving holiday. Plaintiff then filed a motion for reconsideration in the Michigan Court of Appeals, but his motion was denied as untimely. Plaintiff then attempted to file an appeal in the Michigan Supreme Court, but contends that the refusal of Defendant Hardiman to provide him with timely photocopies, the lack of access to electronic court filings, the unavailability of express or overnight mail, and the restricted access to the law library for the Christmas holiday all prevented him from sending his motion in a timely fashion. Plaintiff states that, as a result, he has procedurally defaulted his state law claims.

The Court notes that in addition to the court filings detailed by Plaintiff in his complaint, he also filed a habeas corpus action in the United States District Court for the Eastern District of Michigan. *See Pann v. Warren*, No. 5:08-cv-13806, 2011 WL 4528361 (E.D. Mich. Sept. 29, 2011). The court described the facts and procedural history of Plaintiff's criminal case in great detail. *Id.*, 2011 WL 4528361, at *1–12. The court noted witness testimony that Bernice Gray had been seen buying cigarettes after the date of her disappearance:

> Jeff Greggo testified that he was employed at a midnight wrecker driver at the Marathon gas station at Ten Mile Road and Mound Road in December, 1991 and that he normally got off work at 7:00 a.m. He recalled that one of Bernice Gray's male family members came to the station on December 28, 1991 and asked to place a missing person poster on the window. Greggo viewed the flyer and told the man that he thought the woman looked familiar and had recently purchased two packs of Marlboro cigarettes at the gas station. Greggo said that he may have seen the woman during the latter part of his shift two days earlier. At trial, Greggo admitted that he could not recall an exact date or time that he saw the women who looked like Bernice Gray. Greggo did not believe that he spoke to police about the matter at the time, but he recalled speaking to Lieutenant McFadzen shortly before trial and telling him that he wasn't sure of the facts due to the passage of time.

*Id.* at *10.

The court addressed Plaintiff's claim that the trial court erred in admitting the probate court judgment which declared that Bernice Gray died on December 26, 1991, and found that the Michigan Court of Appeals' denial of relief was neither contrary to Supreme Court precedent nor

3

an unreasonable application thereof. *Id.* at *17. The court noted that the judgment was entered during the ordinary course of the Macomb County Probate Court's governmental affairs in order to settle Bernice Gray's estate and was not issued by the probate court for the purpose of proving any facts at Plaintiff's criminal trial, thus it was properly admitted as a public record and did not violate the Confrontation Clause. *Id.* The court then addressed Plaintiff's due process claim, noting that the witnesses who testified at the probate court hearing appeared at trial and were subject to questioning and cross-examination before the jury, and that the prosecution presented independent evidence and testimony as to Bernice's death and its time and location. *Id.* The court concluded that given those circumstances, the admission of the probate court judgment did not deprive Plaintiff of a fundamentally fair trial. Finally, the habeas court noted that even if the trial court erred in admitting the probate court judgment, such an error was harmless because "the prosecution presented sufficient evidence, other than the probate court judgment, to establish the fact of Bernice Gray's death, as well as its time and location, as well as sufficient evidence, albeit circumstantial, to show that Petitioner committed the crime." *Id.* at *18.

In his habeas corpus petition, Plaintiff also asserted that his trial counsel was "ineffective for failing to interview and call witnesses who would have testified that they saw someone resembling the victim and/or her car after 6:40 a.m. on December 26, 1991." *Id.* at *28. The court noted that the Michigan Court of Appeals had denied relief on this claim:

> According to the police reports, one of these sightings occurred on December 26, 1991, at 9:00 or 9:30 a.m., another occurred on January 3, 1992, and the others took place on December 28, 1991. However, the four sightings of the victim's car took place after her car was observed abandoned on Eastlawn Street. The purported sightings of the victim in Pontiac (at an AA meeting), and in Grand Rapids (hitchhiking and flagging down cars), were of suspect reliability. There was also a claimed sighting of the victim sitting in her car, on December 26, 1991, at 9:30 a.m., parked on I–696, just east of the Southfield Road exit. However, this report was also suspect because, by then, her mother had already driven on that freeway looking for the victim and her car. Defendant has failed to show that defense

4

> counsel's failure to investigate these questionable reports or call the witnesses deprived him of a substantial defense.

*Id.* (citing *People v. Pann*, No. 271013, 2007 WL 2683771, at *10 (Mich. Ct. App. Sept. 13, 2007)).

The court concluded that the decision of the Michigan Court of Appeals was neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts:

> First, Petitioner has not shown that trial counsel was deficient. Counsel had access to the police reports and may have reasonably determined that further investigation was unnecessary due to the location and/or timing of the sightings. Moreover, counsel did produce one witness, gas station attendant Jeff Greggo, who testified that he saw the victim buy cigarettes that morning in an area where she could have traveled. Trial counsel's decisions are entitled to a significant measure of deference. As the Supreme Court has recently stated, "[t]here comes a point where a defense attorney will reasonably decide that another strategy is in order, thus making particular investigations unnecessary ....Those decisions are due a heavy measure of deference." *Cullen v. Pinholster,* ⸺ U.S. ⸺, 131 S.Ct. 1388, 1407, 179 L.Ed.2d 557 (2011) (reversing grant of habeas relief on ineffective assistance of counsel claim) (citations omitted). Moreover, even if counsel was deficient, Petitioner has not shown that he was deprived of a substantial defense or otherwise prejudiced by counsel's failure to interview or present the witnesses at issue. The victim sightings in Pontiac, Grand Rapids, and on I–696 were of questionable reliability and the car sightings occurred after the victim's abandoned car was seen and/or found on Eastlawn Street in Detroit. Presenting such suspect testimony would not have benefitted the defense and could have undermined the credibility of trial counsel and the defense case. Habeas relief is therefore not warranted on this claim.

*Id.* at *29. The district court ultimately denied Petitioner's request for habeas corpus relief and ordered that a certificate of appealability would be denied. *Id.* at *32.

Plaintiff now seeks an order declaring that Defendants violated his Fourteenth Amendment due process and equal protection rights, as well as his rights under the First Amendment. Plaintiff also seeks compensatory and punitive damages related to his incarceration, a jury trial, and any other relief to which he might be entitled.

5

**II.      Failure to state a claim**

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to

6

identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Defendant Muskegon Correctional Facility

Initially, the Court notes that Plaintiff has named the Muskegon Correctional Facility (MCF) as a party in this case. An express requirement of 42 U.S.C. § 1983 is that the defendant be a "person." *See Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978). MCF is an administrative unit of the Michigan Department of Corrections. Neither a prison nor a state corrections department is a "person" within the meaning of section 1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989). Furthermore, Plaintiff's claim against this Defendant is barred by the Eleventh Amendment. *Alabama v. Pugh*, 438 U.S. 781, 782 (1978). That amendment prohibits suits in federal court against the state or any of its agencies or departments. *Pennhurst State School & Hosp. v. Haldermann*, 465 U.S. 89, 100 (1984), *superseded by statute on other grounds*, 28 U.S.C. § 1367. A state's Eleventh Amendment immunity is in the nature of a jurisdictional defense and may be raised on the court's own motion. *Est. of Ritter v. Univ. of Mich.*, 851 F.2d 846, 852 (6th Cir. 1988). The Supreme Court has squarely held that the Eleventh Amendment bars federal suits against state departments of corrections. *Alabama v. Pugh*, 438 U.S. 781, 782 (1978) (per curiam). MCF is, therefore, not subject to a section 1983 action.

### B. *Heck v. Humphrey*

As noted above, Plaintiff claims that his inability to challenge the probate court judgment declaring Bernice Gray dead violated his due process and equal protection rights because the probate court's judgment was the basis for his criminal conviction. Plaintiff is seeking injunctive and declaratory relief, as well as compensatory damages, related to his continued incarceration and punitive damages. However, Plaintiff's claims for injunctive, declaratory, and monetary relief are

7

barred by *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994), which held that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, *or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid*, a § 1983 plaintiff must prove that the conviction or sentence has been [overturned]." *See Edwards v. Balisok*, 520 U.S. 641, 646 (1997) (emphasis in original). In *Heck*, the Supreme Court held that a state prisoner cannot make a cognizable claim under § 1983 for an allegedly unconstitutional conviction or for "harm caused by actions whose unlawfulness would render a conviction or sentence invalid" unless a prisoner shows that the conviction or sentence has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." 512 U.S. at 486–87 (footnote omitted). The holding in *Heck* has been extended to actions seeking injunctive or declaratory relief. *See Edwards*, 520 U.S. at 646–48 (declaratory relief); *Clarke v. Stalder*, 154 F.3d 186, 189–90 (5th Cir. 1998) (claim for injunctive relief intertwined with request for damages); *Wilson v. Kinkela*, No. 97-4035, 1998 WL 246401, at *1 (6th Cir. May 5, 1998) (injunctive relief). Plaintiff's allegations regarding his inability to challenge the probate court judgment declaring that Bernice Gray was dead clearly call into question the validity of his conviction and imprisonment. Therefore, those allegations are barred under *Heck* until his criminal conviction has been invalidated.

### C.     Access to courts

Moreover, Plaintiff's First Amendment access to courts claim clearly lacks merit. Plaintiff claims that Defendants' actions prevented him from filing a timely motion for reconsideration in the Michigan Supreme Court regarding the declaration of death as to Bernice Gray. It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430

U.S. 817, 821 (1977). The principal issue in *Bounds* was whether the states must protect the right of access to the courts by providing law libraries or alternative sources of legal information for prisoners. *Id.* at 817. The Court further noted that in addition to law libraries or alternative sources of legal knowledge, the states must provide indigent inmates with "paper and pen to draft legal documents, notarial services to authenticate them, and with stamps to mail them." *Id.* at 824–25. The right of access to the courts also prohibits prison officials from erecting barriers that may impede the inmate's access to the courts. *See Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992).

An indigent prisoner's constitutional right to legal resources and materials is not, however, without limit. In order to state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000. In other words, a plaintiff must plead and demonstrate that the shortcomings in the prison legal assistance program or lack of legal materials have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim. *Lewis*, 518 U.S. at 351–53; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). The Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, 518 U.S. at 355. "Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc). Moreover, the underlying action must have asserted a non-frivolous

9

claim. *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (*Lewis* changed actual injury to include requirement that action be non-frivolous).

As noted above, Plaintiff complains that he was unable to appeal the probate court judgment declaring Bernice Gray's death. Such an action does not fall into the category of cases which constitute actual injury for a First Amendment access to courts claim. Moreover, for the reasons set forth by the district court in addressing Plaintiff's habeas corpus petition, the admission of the probate court judgment during Plaintiff's criminal trial did not violate his constitutional rights and, even if it had done so, it was harmless error. Therefore, because Plaintiff has not alleged an actual injury, his claim that he was denied the access to courts is properly dismissed.

### D.     Equal protection

As noted above, Plaintiff's equal protection claims, which are entirely conclusory, are barred by *Heck*. However, even if they were not barred, they would be properly dismissed for lack of merit. The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. Const., amend. XIV; *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). Because the crux of an equal protection violation is the treatment of similarly situated people differently, "[a] plaintiff bringing an equal protection claim must be 'similarly situated' to a comparator in 'all relevant aspects.'" *Tree of Life Christian Schools v. City of Upper Arlington*, 905 F.3d 357, 368 (6th Cir. 2018) (quoting *Paterek v. Vill. of Armada*, 801 F.3d 630, 650 (6th Cir. 2015)). In other words, "the comparative [person] 'must have dealt with the same [decisionmaker], have been subject to the same standards, and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the [decision-maker's] treatment of them for

it.'" *Umani v. Mich. Dep't of Corr.*, 432 F. App'x 453, 460 (6th Cir. 2011) (quoting *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998)).

Plaintiff, however, fails to allege any facts suggesting that he was treated differently from any similarly situated inmates. He also fails to provide facts leading to an inference that any of the Defendants intentionally discriminated against him. Plaintiff's conclusory claim of an equal protection violation does not suffice. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. Plaintiff's Fourteenth Amendment equal protection claims will, therefore, be dismissed.

### E. Due process

Plaintiff claims that his inability to challenge the probate court's judgment declaring Bernice Gray's death violated his due process rights. "The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazzetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due process claim involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient . . . ." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citations omitted).

As noted above, to the extent that Plaintiff is claiming the probate court's judgment was the basis for his criminal conviction, his claim is barred by *Heck*. Plaintiff fails to allege any other

11

deprivation as a result of his inability to challenge the probate court's judgment. Therefore, Plaintiff's due process claims are properly dismissed.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis, e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.

Dated:  June 14, 2022         /s/ Paul L. Maloney
                              Paul L. Maloney
                              United States District Judge